## THE TERRITORY, ETC., ET AL. *v.* GOLDING.

MORTGAGE, FORM OF.—A conveyance of lands to secure a debt due from the mortgagor, the amount of which debt is stated *prima facie* only in the mortgage, leaving a further adjustment of the debt to be made between the mortgagor and mortgagee, is nevertheless a mortgage, and may be enforced as such for whatever amount may be found due in an action to foreclose.

ID.—A conveyance of lands as security for a debt may be enforced as a mortgage, even though the conveyance contains no clause directing or authorizing a foreclosure on default by the mortgagor, and though in the mortgage there be no obligation on the part of the mortgagee to reconvey to the mortgagor on a satisfaction by him of the debt secured by the mortgage.

A MORTGAGE BY A PUBLIC OFFICER TO SECURE AN INDEBTEDNESS due to the territory through the defalcation of such officer, though unauthorized by law, is not in violation of public policy, and the giving of which does not impair the right of action upon the official bond of such officer.

MORTGAGE—ACTION TO FORECLOSE, PARTIES TO.—G., a collector of taxes, having failed to pay into the proper treasury tax moneys by him collected, executed a mortgage to S. to secure the moneys which thus became due respectively to the territory and Salt Lake county. On an action to foreclose, *held*, 1. That the mortgage was such a one as G. could execute and S. receive for the beneficiaries named therein, and that in the absence of a statute to the contrary, the territory and county each could accept of the act of S., the trustee, and sue to convert into money the property thus voluntarily appropriated by G. to secure his debt. 2. That S., the trustee, and the territory and county were proper parties plaintiff in the action to foreclose.

APPEAL by the defendant from the judgment of the third district court. The opinion states the facts.

*Jacob S. Boreman and Tilford & Hagan,* for the appellant.

1. Complaint states that two bonds had been given to secure the territory and county for the very moneys now sued for, and it does not show that those bonds have been sued upon, and the security thereby given exhausted, before this suit was brought. The first security must be exhausted before the second can be sued for or upon.

2. The instrument sued on is not authorized by law, and is against public policy. The appellant was an officer, assessor and collector of taxes. The law required him to give bonds with security, which he did, and there was no provision for further security. The county and territory were already duly secured by two bonds, as appears by the complaint, and

it is expressly stated in the instrument that the giving of it shall not prevent suit on the bonds.

3. The instrument sued on does not possess the necessary elements of a mortgage: 1. No sum is agreed upon as due either of the respondents; it was for an unascertained amount, and not a debt certain; 2. No penalty is attached to failure to pay the money found due; 3. No authority is given to foreclose, but if the twenty-two thousand two hundred and eight dollars be not paid, the property is to be held as security; 4. No obligation to reconvey.

4. The document sued on is not a complete mortgage, and no suit can be maintained on it until final settlement of accounts between appellant and the county and territory: 4 Kent's Com. 133; 4 Allen, 419; 77 Pa. St. 134.

5. The document is not single and entire, but is a commingling of three contracts in one.

There is a misjoinder of plaintiffs.

Our civil practice act, sec. 14, requires that "those who are united in interest" shall be joined as plaintiffs: Comp. Laws, 1239. The same section authorizes a "number less than all," in some instances, to be joined, but there is no authority for joining as plaintiffs those not united in interest.

Our civil practice act, sec. 4, provides that the action shall be in the name of the "real party in interest." Snow is not the "real party in interest" as to either the claim of the county or of the territory, nor is the county the real party in interest as to the alleged cause of action of the territory, nor is the territory the party in interest as to the cause of action of the county.

This court has said, in a case somewhat similar to the one now before the court, that "the county and territory can not unite in a suit for money belonging to each, as a separate corporation, or to one to the exclusion of the other. The title to and ownership of the money sought to be recovered must determine the right of action:" *County of Salt Lake and Territory of Utah* v. *R. J. Golding,* 2 Utah, 319, and cases cited.

The action is multifarious under the old equity practice: Bliss on Pleading, sec. 289; and bad on account of misjoinder of parties, under the code practice generally: Id., secs. 73,

76, 97, 111, 414, note 3, sec. 61; *Wilson* v. *Castro,* 31 Cal. 420; *Smith* v. *Swift,* 46 Id. 266; *Schultz* v. *Winter,* 7 Nev. 131.

The county of Salt Lake and the territory are not parties to the mortgage, neither as mortgagors nor as mortgagees, and have no right to foreclose it.

Snow is not a proper party, because he has no interest in the suit, and if he should get judgment, the money would, in his hands, be where it is now, that is, in the hands of a trustee: *People* v. *Booth,* 32 N. Y. 366; *People* v. *Ingersoll,* 17 Am. Rep. 178.

*Snow & Snow,* for the respondents.

The judgment roll only is before this court; the only questions raised are such as grow out of the complaint and the demurrer interposed in the court below. The demurrer was overruled, and the defendant answered. This was a waiver of the demurrer: *Pierce* v. *Minturn,* 1 Cal. 470; *Brooks* v. *Minturn,* Id. 481.

As to the first cause of demurrer we say, in the court below no statement was made in the arguments of any fact which ought to have been stated in the complaint which was not therein set forth, so we shall wait till some statement of the kind is pointed out.

As to the second and third causes of demurrer, an action to foreclose a mortgage is a case cognizable in chancery, and by the rules in equity all parties in interest must be made parties to the suit.

Our civil practice act is the same: Comp. Laws, 402 (1237), sec. 12, 403 (1239), sec. 14; Id. 574, c. 1.

To this no objection could be urged had not our civil practice act authorized a trustee of an express trust to bring a suit in his own name without joining with him the *cestui que trust:* Comp. Laws, 402 (1231), sec. 6.

But in this section there are no negative words, which leave the trustee and the benficiaries in the trust property to unite in the action if they desire.

There is nothing in reason or in law to prevent A., who is severally indebted to B. and C. for money due each of them, from giving a mortgage on his real estate to D. to secure the

payment of these several sums of money, nor is there any thing in reason or in law or in equity to prevent all these uniting in the action to foreclose such a mortgage. The subject of the action is the property mortgaged. A. is interested as debtor and mortgagor; B. and C. are severally interested in getting the debt of each, and D., as trustee, in discharging the duties of the trust. A., by giving the mortgage to D., makes D. a trustee, and D., by accepting the mortgage, consents to act as a trustee. B. and C., although not present nor consulted when the mortgage was given, may adopt the act.

The joining in the suit to foreclose the mortgage is an adoption of the act.

But we said in the complaint, page 2, which the demurrer admits, that the mortgage was given at the request of Golding, and with the consent of the county court and of the said Snow and the auditor of public accounts. The county spoke by its county court, the territory by the auditor of public accounts, and Snow and Golding by themselves.

If either Snow or the territory or the county is not a necessary party, the court below had, and this court has, the power to strike out the improper party: Civ. Pr. Act, Comp. Laws, 417 (1293), sec. 68; Id. 418 (1296), sec. 71; Id. 494 (1562), sec. 337.

TWISS, J.:

The complaint in this case alleges that the defendant was from the first day of January, 1870, to the thirty-first day of December, 1875, assessor and collector of the territorial and county taxes for and within the territory of Utah and county of Salt Lake, and that during that time he assessed and collected as territorial and county taxes twenty-two thousand two hundred and eight dollars, over and above all he accounted for, including his commissions for services and remitted and uncollected taxes; that of this sum there was due the county of Salt Lake the sum of thirteen thousand two hundred and twenty dollars and thirty-one cents, and to the territory of Utah the sum of eight thousand nine hundred and eighty-seven dollars and sixty-nine cents; that on the twenty-eight day of July, 1876, the county court of said county ordered that the said plaintiff Snow, as attorney for

the county, take such steps as the law provides to secure and collect the said several sums of money from him, the said Golding; and that afterwards, on the tenth day of October, A. D. 1876, at the instance and request of the said Robert J. Golding, and with the consent of the said county and of the said Zerubbabel Snow, and of William Clayton, auditor of public accounts, the said Robert J. Golding, in due form of law, executed and delivered to the said Zerubbabel Snow a mortgage, which said mortgage is in the words and figures following, to wit:

" Know all men by these presents, that I, Robert J. Golding, of the city and county of Salt Lake and territory of Utah, for and in consideration of twenty-two thousand dollars to me in hand paid by Zerubbabel Snow, of the same place, at and before the unsealing of these presents, the receipt thereof I hereby acknowledge, have given and granted, bargained and sold, and by these presents I do give, grant, bargain and sell, confirm and convey, to him, the said Zerubbabel Snow, his heirs and assigns forever, the real estate hereinafter described, with all the rights, privileges, and appurtenances thereunto belonging, or in any wise appertaining, which said real estate is situated in the city and county of Salt Lake and territory of Utah, and is a part of Salt Lake city survey; the description of the real estate conveyed and intended to be conveyed by these presents is as follows." [Here follows the description of land conveyed.]

" The condition of the foregoing conveyance is such that, whereas I, the said Robert J. Golding, was during the six years commencing January 1, A. D. 1870, and terminating December 31, A. D. 1875, the duly appointed and qualified assessor and collector of Salt Lake county, in the territory of Utah, and as such assessor and collector, I, during the years aforesaid, collected divers and sundry sums of money by collecting taxes belonging to the people of the county of Salt Lake, in said territory of Utah, and the people of the territory of Utah, for which said sums of money I and my respective sureties, in my respective official bonds, were liable to the people aforesaid; and whereas, also, on the twenty-eighth day of July, A. D. 1876, the county court of Salt Lake county aforesaid, as it was their duty to do, examined my

account as such assessor and collector for the years aforesaid, and on such examination it appeared from the books of account that I had collected in money,.over and above what I had credits for, the sum of twenty-two thousand two hundred and eight dollars, of which said sum of money it appeared that I was indebted to the people of said county in the sum of thirteen thousand two hundred and twenty dollars and thirty-one cents, and to the people of the territory in the sum of eight thousand nine hundred and eighty-seven dollars and sixty-nine cents, over and above the unremitted and uncollected taxes assessed during the six years aforesaid, and the said county court, on the said twenty-eighth day of July, in the year 1876, by its order, duly made, directed the said Snow, the prosecuting attorney of the county of Salt Lake, to take and resort to such steps as the law provides to further investigate the said accounts, and collect whatever amount might be found due to the people aforesaid.

"Now, therefore, if I, the said Robert J. Golding, my heirs, administrators, executors, or assigns, shall pay, or cause to be paid, the said sum of twenty-two thousand two hundred and eight dollars on request, then this conveyance to be void, otherwise to remain as security for the payment of the same. It is understood by the contracting parties hereto that as I, the said Robert J. Golding, claim that I have made payments in money to the territorial treasurer and the county treasurer, for which I have not been credited, I am not to be precluded from showing that fact in any action on this mortgage, or in any action that may be taken hereafter concerning this money against me, this only being considered as *prima facie* correct as to amount, I giving notice of the items for which I claim credits.

" It is further understood by the contracting parties  *   *   * that the giving of this mortgage, and the acceptance thereof by the said Zerubbabel Snow, as prosecuting attorney, is not to prevent suit at any time on the official bonds, if ordered to be commenced, either by the county court, the auditor of public accounts, or by any surety on any official bond.

" Whereas, also, hope is indulged that said real estate can be sold better at private than at public sale, it is therefore understood that if I, the said Robert J. Golding, be able to

sell any or all of said real estate at private sale, I am at liberty to contract for such sale, and on paying a fair cash valuation for any piece so sold, to the county or territorial treasurer, the mortgagee is to release such part without prejudice to his right to a lien on the residue. The purchaser in such private sale being charged with the duty of seeing to and applying the purchase money to the purpose intended by this mortgage.

"In testimony hereof I have hereunto set my hand and seal, this tenth day of October, A. D. 1876, at Salt Lake City aforesaid.

"[Seal.]                               R. J. GOLDING."

"Signed, sealed, and delivered in presence of
                           "D. BOCKHOLT,
                           "THEODORE McKEAN."

This deed was duly acknowledged and recorded.

By reason thereof, the plaintiffs say that said Zerubbabel Snow is a trustee of an express trust of the title of the real estate in the said mortgage described, and that no part of the said real estate has been sold; that no part of said money has been paid; that no error has been pointed out in the statement of said account, though every opportunity has been given the said R. J. Golding to point out or ascertain if any errors exist.

The said plaintiffs aver that the whole amount of said money is now justly due from the said Robert J. Golding to the said county and territory, on the said respective sums as before stated, with interest thereon from the said twenty-eighth day of July, A. D. 1876, till the present time.

The said plaintiffs pray judgment against the said Robert J. Golding, to be entered for the said several sums due to the county of Salt Lake, including interest thereon from the said twenty-eighth day of July, 1876, being the sum of fifteen thousand eight hundred and sixty-four dollars and thirty-six cents, and to the territory of Utah, with interest during the same time, being the sum of ten thousand seven hundred and eighty-three dollars and seven cents, and for an order of court that said real estate be sold in the manner provided by

law, to make said money, and for other and further relief as law and equity may require, and for the costs to be taxed.

The defendant demurred and assigned the following grounds of demurrer: 1. That said complaint does not state facts sufficient to constitute a cause of action. 2. That there is a misjoinder of parties plaintiff in this, that the territory of Utah is improperly joined with Salt Lake county as party plaintiff herein, and both said plaintiffs are improperly joined as co-plaintiffs herein with said Zerubbabel Snow, and all three of said plaintiffs are improperly joined with each other as plaintiffs herein. 3. That there is a misjoinder of causes of action herein, to wit, an action to foreclose a pretended mortgage herein is improperly joined with an action to recover a pretended sum of money due to and belonging to the territory of Utah, and each and both of said causes of action are improperly joined with an action to recover money due Salt Lake county, and the said causes of action are not separately set out as stated. 4. That the territory of Utah has no legal right or capacity to sue herein, nor has the county of Salt Lake any legal capacity to sue herein, nor has said Z. Snow any legal capacity to sue herein. 5. That said Z. Snow has no interest in the event of the suit herein, and is not a real party in interest, and is improperly joined as plaintiff.

Upon the overruling of the demurrer, the defendant answered, specifically denying the allegations of the complaint. The complaint and answer were both duly verified.

Upon the report of the referee it was ordered, adjudged, and decreed by the court that the territory of Utah have and recover from the defendant the sum of ten thousand three hundred and thirty-nine dollars and ninety-seven cents, and that Salt Lake county have and recover of and from the defendant the sum of fourteen thousand three hundred and ninety-one dollars and twenty-nine cents, with costs.

And it is further ordered, adjudged, and decreed by the court that the several sums of money, and each of them, are and they are hereby declared to be, a lien on the real estate described in the mortgage and complaint, and on each and every part and parcel thereof, and that they have been such lien continuously since October 10, 1876, the date of the mortgage.

The court further ordered that unless the said several sums of money be paid within ten days, the United States marshal levy on and sell the real estate described in the mortgage and complaint, or so much thereof as may be necessary to make the said several sums, with interest and costs; that out of the proceeds of said sale he pay the costs and expenses of the sale and suit, and so much of the residue as may be sufficient to pay the said several sums of money herein adjudged to be due to the territory of Utah and to Salt Lake county, and the balance, if any, he bring into court, to abide its further order.

That if the proceeds arising from said sale be insufficient to pay the full amount due to the said territory and county, as herein found due and adjudged to be paid to each of them, the amount arising from said sale, after deducting the costs of sale and of this proceeding, be apportioned between the territory of Utah and Salt Lake county, in proportion to their respective claims, and that the marshal make due report of his proceedings, etc.

This action is based upon a deed from the defendant, conveying certain real estate to the plaintiff Snow, upon condition therein contained, reciting his delinquencies as collector of the territory of Utah and Salt Lake county, and his liabilities by reason of his failure to pay to the territory and county money collected by him as such collector; providing, however, that if he should pay said indebtedness the deed should be void, otherwise to remain as security for the payment of said debts. Is this transaction a conveyance of real estate for the purpose intended by the parties? Is the instrument sued on authorized by law? and is it against public policy? are questions urged by counsel for the defendant. By this deed, the title to the land therein described was not conveyed to the territory of Utah and county of Salt Lake, nor to either of them; nor was it received in payment or satisfaction of the claims against Golding, or any part thereof; but it was a conveyance to Snow as "security" for the payment of the debts and obligations therein described. Golding, acknowledging his delinquencies, undertakes to provide for the payment of the same, by placing the title of certain property in the name of a third person, directing that it be sold (unless he shall pay said sums of money) and the proceeds

thereof be paid into the territorial and county treasuries, in discharge of the obligations created by his default, and thereby, in part at least, to cancel his delinquencies and fulfill in good faith his obligations as a public officer. This land or the proceeds of the sale thereof constitute a fund for the payment of these obligations. The giving of this mortgage or deed of trust was entirely consistent with good morals, honest and fair dealing between Golding and the beneficiaries, and created a valid trust: *Craig* v. *Leslie*, 3 Wheat. 563.

As soon as the taxes were paid to the defendant, an obligation on his part was thereby created to pay the same into the proper treasury, and on his failure to do so at the time required by law he became delinquent, and public policy in the strongest of terms demanded that he restore to the territory and county the amount of his defalcations; his efforts in this behalf in no way impair the rights of the territory or county upon his official bonds, or any right of action against him for the recovery of the amount of his delinquencies: *Nielson* v. *Sagur*, 12 Wheat. 98, citing 15 Id. 290; 10 Id. 343; 5 Id. 117; *Dugan's Ex'rs* v. *United States*, 3 Id. 172.

The provisions in the deed, "that the giving of this mortgage and the acceptance thereof is not to prevent suit at any time on the official bonds if ordered to be commenced, either by the county court, the auditor of public accounts, or by any surety on any official bonds," prohibits, as far as it was in his power, the relaxation of any right of action on his bonds against his sureties, and this inhibition, and the authorities cited, should conclude all question of public policy urged against the conveyance, based upon the assumption that it impairs rights of action upon the official bonds of the defendant. For these reasons, and others that might be adduced, we are of the opinion that the instrument sued upon is one that Golding had a right to make, and Snow a right to receive, and that it is not against public policy; that it is a conveyance to Snow of the title to the land therein described, upon the condition and subject to the charges therein contained: *Nielson* v. *Sagur*, 12 Wheat. 98.

The further positions strongly urged by counsel in argument remain to be considered. That neither one nor all of the plaintiffs have such an interest in the subject-matter of

this suit as will permit all, or any two of them jointly, or either of them alone, to be plaintiffs or plaintiff in an action thereon; and that a cause of action to foreclose a mortgage can not be joined with a cause of action to recover a sum of money, when said causes are not separately set out or stated.

The territory of Utah is a body politic, created and organized by congress, having legislative power over all rightful subjects of legislation consistent with the constitution of the United States and acts of congress. In the exercise of this power the territorial legislature has provided by statute for the levying, assessing, and collection of taxes, and Golding, in the exercise of the authority vested in him as collector, collected taxes to an amount exceeding twenty thousand dollars, which he failed to pay into the proper treasuries as required by law; thereupon he became delinquent in the several sums unpaid and due the territory and county respectively. The right of Golding to pay, and the right of the territory and county to receive this money in any way he may choose to pay it, or to consent to be paid, can not be doubted unless it be in some way prohibited by law. Golding by his failure to pay this money into the proper treasuries has by such dereliction of public duty created an obligation upon himself of the strongest kind; in the absence of any statute prohibiting the territory or county from recovering this money in the way provided and directed by Golding in his deed to Snow, where is the rule or authority of law prohibiting either to receive it, or, if necessary, a resort to proceedings in equity to recover it? We have been unable to find it: *Commonwealth v. Reed*, 2 Bush, 618; S. C., 6 Am. Law Reg., N. S., 164, note.

Snow, in whom is the legal title, brings this action to foreclose, the ultimate object of which is to get the money due and owing from defendant to the territory and county by reason of his default. It is not an action penal in its nature, nor upon a charge of misfeasance in office; it is for the purpose of reducing into money the property appropriated by Golding to purposes declared by him, and to take the decree or judgment of the court as to the appropriation or distribution of the proceeds of the sale. The rules of equity practice require that parties interested in the fund or security created by the deed of Golding be before the court that they may be

heard before decree is made directing the application of the proceeds of sale. Story, in his Equity Pleadings, sec. 201, says: "All persons who have the legal interest in the mortgage, as well as those who have the equitable interest therein, are necessary parties to a bill to foreclose. There can be no redemption or procedure unless *all* the persons entitled to the whole mortgage money are before the court. Thus, for example, a person entitled to a part only of the mortgage money can not file a bill to foreclose the mortgage as to his own part of the money, but all other persons in interest must be made parties. So, if the mortgagee has been made a trustee in trust, all the *cestuis que trust*, or beneficiaries, should be made parties, as well as the trustee, to foreclose:" Pomeroy on Civil Rem., secs. 247, 260, 267; Civ. Pr. Act, sec. 246. Section 14 of the civil practice act, providing that "of the parties to the action those who are united in interest shall be joined as plaintiffs," is declaratory of the law applicable to this case: Pomeroy on Civil Rem., sec. 196.

Judgment of district court affirmed.

HUNTER, C. J., and EMERSON, J., concurred.